# Skadden, Arps, Slate, Meagher & Flom LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-4132
DIRECT FAX
917-777-4132
EMAIL ADDRESS
SUSAN.SALTZSTEIN@SKADDEN.COM

July 26, 2022

**BY ECF**

Hon. Mary Kay Vyskocil
United States District Court Judge
Southern District of New York
U.S. Courthouse, 500 Pearl St.
New York, New York 10007-1312

RE: <u>Canoo Inc. v. DD Global Holdings Ltd., No. 22-cv-3747</u>

Dear Judge Vyskocil:

We are counsel to DD Global Holdings Ltd. ("DD Global"), and write pursuant to Section 4(A)(i) of Your Honor's Individual Rules of Practice in Civil Cases to respectfully request a pre-motion conference concerning the motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) that DD Global seeks to file with respect to the Complaint (ECF No. 1) filed by Canoo Inc. ("Canoo"). The proposed motion is not on consent of all parties.

In this action, Canoo seeks to misapply Section 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p(b)) ("Section 16(b)") in hopes of obtaining a substantial undeserved and inequitable windfall. Section 16(b) requires statutory insiders (which includes 10% beneficial owners) to "disgorge" any profit obtained from matching non-exempt securities transactions occurring within a six-month period. Although DD Global indisputably received no profits from its transactions in Canoo securities, Canoo asserts that it is entitled to an award of $61.11 million pursuant to Section 16(b). Canoo's claim is misplaced and should be rejected.

<u>Alleged Facts</u>. DD Global was one of the original investors in Canoo prior to its public listing in December 2020 upon its acquisition by a special purpose acquisition company. (¶¶ 12-13.) Because DD Global is a foreign entity, it was required to enter into a National Security Agreement with the U.S. Departments of Defense, Justice, and the Treasury, on behalf of the Committee on Foreign Investment in the United States (the "NSA"), pursuant to which DD Global's "control and governance influence" over Canoo was restricted. (¶ 14.) The NSA also obligated DD Global to reduce its shareholdings in Canoo by specified deadlines. (¶ 15.)

      To comply with the NSA deadlines, on October 6, 2021, DD Global entered into a purchase agreement with AFV-Partners SPC-7 LLC ("AFV") (an affiliate of Canoo's chairman), pursuant to which DD Global would sell more than 53 million shares to AFV at $6.53 per share, a discount to the closing price. (¶ 16.) On November 19, the agreement was amended to reduce AFV's purchase obligation from 53 million shares to approximately 35 million shares. (¶ 17.) The sale of the reduced number of shares was completed on November 22, at the agreed $6.53— a very substantial discount to the then closing price. (*Id.*) The reduction in the number of shares purchased by AFV caused DD Global to be left with shares that still needed to be disposed of by a subsequent deadline to maintain compliance with the NSA. (*See* ¶ 15.)

      On March 15, 2022, to comply with the NSA, DD Global entered into a transaction with Bank J. Safra ("BJS"), a Swiss bank. (¶ 19.) DD Global "purported to sell" 10.5 million shares of Canoo stock at $6.53 per share and simultaneously "subscribed" for 10.5 million participation notes at $6.72 per share (with a reference price of $6.53). (¶ 20.) Pursuant to the participation note, "DD Global acquired the economic benefits of ownership (i.e., a pecuniary interest) in 10.5 million Canoo common shares." (¶ 3.) Thus, the "simultaneous transactions" left DD Global's pecuniary interest in the 10.5 million shares unchanged, but DD Global sacrificed its direct ownership of the shares (and 19 cents per share) to maintain compliance with the NSA. (¶¶ 3, 19-20.) To the extent Canoo suggests in places that there was a third transaction – a separate equity swap (¶ 19) – such suggestion is based on a misreading of the Form 4, which reports the participation note as akin to a swap (not a separate transaction) and explains its terms.

      <u>There Is No Personal Jurisdiction, and Section 16(b) Does Not Apply Extraterritorially</u>. DD Global is a Cayman entity (¶ 7), and is not alleged to have any U.S. operations. The March 15 transaction occurred entirely offshore pursuant to agreements governed by foreign law. There therefore is no personal jurisdiction over DD Global. *See Wagman v. Astle*, 380 F. Supp. 497, 502 (S.D.N.Y. 1974). This case also should be dismissed because Section 16(b) cannot be applied extraterritorially. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010). A Section 16(b) claim does not accrue until there has been both a sale and a purchase. *See Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 870-71 (2d Cir. 2014). Under Canoo's misguided theory, Section 16(b) liability arose when DD Global acquired the non-U.S. traded participation notes outside of the United States. Applying Section 16(b) in these circumstances would apply the statute extraterritorially in violation of *Morrison* and its progeny. *See SEC v. Revelation Cap. Mgmt.*, 246 F.Supp.3d 947, 953 (S.D.N.Y. 2017) (concluding *Morrison* precluded extraterritorial application of analogous statute that involved "a two-legged activity in which both legs are necessary to liability."); *but see Rubenstein v. Cosmos Holdings, Inc.*, No. 19 Civ. 6976 (KPF), 2020 WL 3893347, at *11 (S.D.N.Y. July 10, 2020) (reaching contrary conclusion where issue not squarely raised, "declin[ing] to make Defendants' arguments for them.").

      <u>Canoo's Theory Misapplies Rule 16b-6(c)(2)</u>. Even assuming jurisdiction and application of Section 16(b), the critical underpinning of Canoo's complaint also is misplaced. Incorrectly purporting to apply "the established method in the Second Circuit of calculating disgorgeable 'profits' from short-swing trading" (¶ 4), Canoo attempts to match what it claims was the market price on November 22 (which is not the date of the transaction, even under Canoo's theory), with what it claims was the market price on March 15, 2022, and multiply that price differential by 10.5 million shares to arrive at its economically irrational demand for $61 million. (¶¶ 28-32.)

  Canoo misreads Rule 16b-6(c)(2), which provides that where a derivative transaction is matched with a different type of security, the Section 16(b) profits "shall not exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase." 17 C.F.R. § 240.16b-6(c)(2). Plainly, Rule 16b-6(c)(2) sets a *cap*, not a method for calculating profits for Section 16(b) purposes. The SEC was clear in the adopting release: "the maximum short-swing profit recovery is the difference in market value of the underlying security between the date of purchase and the date of sale. If an insider can demonstrate that the amount of profit was less, then a court can order a lesser recovery." S.E.C. Release No. 17991, 48 SEC Docket 216 (Feb. 21, 1991). DD Global did not realize any profit, even under Canoo's allegations. Indeed, comparing the *actual* price received from the sale to AFV ($6.53) and the *actual* price paid to "purchase" the participation notes (the economic equivalent of Canoo shares) ($6.72, with a reference price of $6.53) (¶¶ 3, 20), reveals that there is no gain to disgorge. *Cf.* 17 C.F.R. § 240.16b-6(c)(1) (actual prices compared if securities have identical characteristics).

  Canoo attempts to sidestep that DD Global realized no profits from the subject transactions by noting that transactions can be matched to create gains even where there were no paper profits. (¶ 2.) That, however, differs significantly from the alleged circumstances here, where no matching of the actual prices can result in the gains Canoo seeks.

  <u>The Transactions Should Not Be Subjected to Section 16(b)</u>. Independently, Canoo's claim fails because of the unique nature of the March 15 transaction, which allegedly occurred in tandem and left DD Global's pecuniary interest in the 10.5 million Canoo shares unchanged. (¶ 3.) There was no opportunity for DD Global to profit from the transaction as it remained fully economically exposed to the 10.5 million shares. *See Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 124 (2d Cir. 2002) ("Where, as here, the transaction at issue does not plainly fall within the literal terms of the statute, '[t]he judicial tendency, especially in this circuit, has been to interpret Section 16(b) in ways that are most consistent with the legislative purposes.'" (alteration in original) (citation omitted).) Indeed, in analogous circumstances, the SEC has exempted from Section 16 "[a] transaction . . . that effects only a change in the form of beneficial ownership without changing a person's pecuniary interest in the subject equity securities." 17 C.F.R. § 240.16a-13; *cf. Chechele v. Standard Gen. L.P.*, No. 20 Civ. 3177 (KPF), 2021 WL 2853438 (S.D.N.Y. July 8, 2021) (exemption unavailable where opportunity to profit).

  Finally, application of Section 16(b) in these circumstances – where DD Global was restricted by the United States government from exercising influence over or gaining information related to Canoo, and where DD Global was required to dispose of its Canoo securities pursuant to the NSA (an agreement with the United States government) – would undermine the purposes of Section 16(b). *See Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595 (1973); *see also Portnoy v. Seligman & Latz, Inc.*, 516 F. Supp. 1188, 1198 (S.D.N.Y. 1981).

  To allow Canoo to recover $61.11 million on these facts would be to give it an undeserved and inequitable windfall that runs contrary to law and the goals of Section 16(b). DD Global respectfully requests that it be permitted to file a motion to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6) on the bases briefly outlined above.

              Respectfully submitted,
              */s/Susan L. Saltzstein*