**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

Aaron Marks, P.C.
To Call Writer Directly:
+1 212 446 4856
aaron.marks@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

July 29, 2022

**VIA ECF**

Hon. Mary Kay Vyskocil
United States District Court, Southern District of New York
500 Pearl St.
New York, New York 10007

      Re:    *Canoo Inc. v. DD Global Holdings Ltd.*, Docket No.: 20-cv-3747 (MKV)

Dear Judge Vyskocil:

      I write on behalf of Plaintiff Canoo, Inc. ("Canoo"), pursuant to Section 4(A)(i) of Your Honor's Individual Rules of Practice, to oppose Defendant DD Global Holdings Ltd.'s ("DD Global") July 26, 2022 letter request for a pre-motion conference (the "Letter"). The Court should not grant DD Global leave to file a motion to dismiss because Canoo has adequately pled a claim for relief under Section 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p(b)).

**Factual Background**

      As alleged in the Complaint, DD Global, an owner of more than 10% of the outstanding shares of Canoo's common stock, engaged in matching purchase and sale transactions in Canoo common shares. On November 22, 2021, DD Global sold approximately 35.273 million Canoo common shares, (Compl. ¶ 18), and on March 15, 2022, DD Global reported transactions which included DD Global's acquisition of 10.5 million notional shares of Canoo common stock through a participation note. (Compl. ¶ 19.) Therefore, DD Global made matching sales and purchases within a six-month period as to 10.5 million Canoo common shares.

      The amount to be disgorged from DD Global under Section 16(b) can be calculated based on the market trading prices for Canoo common shares on the dates in question. On that basis, there was a short-swing profit of $61.11 million ($5.82/share x 10.5 million shares). (Compl. ¶ 32.) While DD Global asserts that such an award to Canoo would be "undeserved" and "inequitable," (Letter at 3), particularly since DD Global was required to sell shares pursuant to an agreement with the U.S. government and because DD Global claims that it did not earn an actual profit on its trading, none of these assertions are pertinent to the applicable analysis here.

**KIRKLAND & ELLIS LLP**

Hon. Mary Kay Vyskocil
July 29, 2022
Page 2

**DD Global's Motion To Dismiss Would Be Futile**

Canoo has adequately pled facts alleging that DD Global violated Section 16(b).

*This Court plainly has Personal Jurisdiction over DD Global*

DD Global, a founding shareholder of Canoo, ignores applicable case law in arguing this Court does not have personal jurisdiction over it. (Letter at 2.) The subject of this lawsuit is DD Global's purchase and sale of common shares of Canoo -- securities publicly traded on the New York Stock Exchange. (Compl. ¶ 3.) It is well established that "a district court may exercise its personal jurisdiction in a securities action if the defendant's activities could reasonably be expected to be visited upon United States shareholders." *Donoghue v. Ghauri*, 2015 WL 3919120, at *3 (S.D.N.Y. June 25, 2015) ("exercise of jurisdiction [in a Section 16(b) case] over a defendant who trades shares of a U.S. corporation, on a U.S. stock exchange, is proper even where the defendant has no other connections to the United States").[1] That DD Global is a Cayman entity and has no U.S. operations is thus irrelevant here, because DD Global traded shares of a U.S. corporation on a U.S. stock exchange. Further, while DD Global argues that Section 16(b) was not intended to apply extraterritorially, (Letter at 2), it acknowledges that this Court in *Rubenstein v. Cosmos Holdings, Inc.* held that Section 16(b) applied extraterritorially because the company was "traded on a domestic exchange." *See* 2020 WL 3893347, at *11 (S.D.N.Y. July 10, 2020).

*Rule 16b-6(c)(2) Is Not Misapplied, And In Any Event, This Is Not a Valid MTD Argument*

For purposes of Section 16(b) profit calculations, the matching of transactions in shares (the November sale) against transactions in derivatives thereon (the March purchase) is not based on the prices set by the parties. Applicable SEC guidance instead provides a cap for such calculation under Rule 16b-6(c)(2) -- "the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase." In this regard, courts and leading commentators have pointed to public market price as the "proper benchmark for calculating short-swing profits." *Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*, 299 F. Supp. 2d 262, 271 (S.D.N.Y. 2004); *see also* Romeo & Dye, *Comprehensive Section 16 Outline* 864 (5th Ed. 2019); Jacobs, *Section 16 of the Exchange Act* (2002) § 3:31 ("[a] court should try to determine the trading price of the underlying security at the moment the derivative security was purchased or sold."). Statutory profits are not the same as economic profits in this context. In fact, "an individual may be charged with a Section 16(b) profit even when . . . trading actually resulted in a substantial financial loss." *Chechele v. Standard Gen. L.P.*, 2021 WL 2853438, at *10 (S.D.N.Y. July 8, 2021). In any event, disputing *how* to calculate disgorgement is not a basis for a motion to dismiss.

---

[1] Defendant's citation to *Wagman v. Astle* (Letter at 2) is inapposite because the court noted there that the company whose shares were being traded was foreign, while Canoo is U.S.-based and its shares are traded on the New York Stock Exchange. *See* 380 F. Supp. 497 (S.D.N.Y. 1974).

# KIRKLAND & ELLIS LLP

Hon. Mary Kay Vyskocil
July 29, 2022
Page 3

Further, a clear understanding of the March transactions, specifically what prices were actually paid, will be required, as we expect that reliance on market trading price is the only accurate indicator of "price" for purposes of the statutory profit calculation.[2]

### *Section 16(b) Applies To DD Global's Transactions*

DD Global is incorrect that its sale and purchase of Canoo common shares do not fall within the scope of Section 16(b). Section 16(b) was crafted as a "blunt instrument to impose a form of strict liability." *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 174 (2d Cir. 2012) (cleaned up). Under Section 16(b), "no showing of actual misuse of inside information or of unlawful intent is necessary to compel disgorgement." *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 218 (2d Cir. 2012). DD Global argues that its March 15 acquisition of a pecuniary interest in 10.5 million of Canoo common shares is somehow exempted from Section 16(b). However, the acquisition of notional shares through a participation note is a call equivalent position, which is treated no differently for Section 16(b) purposes than a purchase of common shares. 17 C.F.R. §240.16b-6 ("[t]he establishment of or increase in a call equivalent position . . . shall be deemed a purchase of the underlying security for purposes of section 16(b)"); *see also Rubenstein v. Knight-Swift Transportation Holdings Inc.*, 492 F. Supp. 3d 206, 217 (S.D.N.Y. 2020) (same, dismissed on other grounds).

Finally, DD Global previews its argument that Section 16(b) should not apply because DD Global was required to sell its Canoo common shares pursuant to the NSA agreement reached with the U.S. government. DD Global, however, cites no case law providing that trading to satisfy such an agreement exempts a party from compliance with Securities laws. Moreover, DD Global does not suggest that it was similarly compelled to acquire economic interest in Canoo common shares when it entered the participation note. This is the March transaction that triggered DD Global's Section 16(b) liability. The notion that Canoo's claim here would undermine the purpose of Section 16(b) is baseless. Long on assertions of inequity and unfairness, DD Global presents no actual basis for Canoo's claims to not be sustained as, at a minimum, viable.

Respectfully submitted,

/s/ *Aaron Marks, P.C.*
Aaron Marks, P.C.

---

[2] In addition, the stated pricing for the privately negotiated March 2022 transactions with the same counterparty appear to bear little connection to fair market value or trading prices on such date, making it imperative that there be an opportunity to learn through discovery what payments were required to be made. In this regard, the price purportedly paid by the third-party counterparty exceeded the trading price on the date of the agreement, as did the insider's price paid for the derivative, neither of which are rational investor behavior, which leads to questions as to what payments were actually made and whether the only correct measure of the derivative purchase price for 16(b) profit calculation purposes is the underlying trading price on such date.