Aaron H. Marks, P.C.
Stephanie Shimada
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CANOO INC., | Case No.: 22-cv-3747 (MKV) |
| *Plaintiff*, | Hon. Mary Kay Vyskocil |
| v. | ECF Case |
| DD GLOBAL HOLDINGS LTD., | |
| *Defendant*. | |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DD GLOBAL HOLDINGS LTD.'S MOTION TO DISMISS THE AMENDED COMPLAINT

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF RELEVANT FACTS ........................................................... 3

    A. DD GLOBAL FUNDS AND CONTROLS CANOO .................................... 4

    B. CANOO GOES PUBLIC ON THE NASDAQ AND THE NSA IS ENTERED .......... 4

    C. THE NOVEMBER 22, 2021 SALE OF SHARES ...................................... 5

    D. THE MARCH 2022 ACQUISITION OF SHARES (THROUGH THE
    PARTICIPATION NOTE) ........................................................................ 6

    E. CANOO RECEIVES DEMANDS FROM SHAREHOLDERS AND PURSUES
    DISGORGEABLE PROFITS FROM DD GLOBAL ...................................... 8

APPLICABLE LEGAL STANDARDS ........................................................... 9

ARGUMENT ............................................................................................. 10

    **I.** Applying Section 16(b) to the Alleged Facts Here Does Not Constitute an
    Extraterritorial Application of the Statute .................................................. 10

        **A.** Section 16(b) Applies to the Transactions at Issue Because Canoo
        Common Shares Are *Listed* on a Domestic Exchange ............................ 10

        **B.** DD Global's Additional Arguments Are Irrelevant and, in Any Event,
        Incorrect .......................................................................................... 13

    **II.** This Court Has Personal Jurisdiction Over DD Global .............................. 16

    **III.** Canoo Has Adequately Pled a Section 16(b) Claim ................................... 19

    **IV.** DD Global's Equitable Argument That The Court Should Disregard Section 16(b)'s
    Application Here is Unavailing ................................................................. 21

CONCLUSION ........................................................................................... 23

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)......................................................................................10

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010)......................................................................13

*Chechele v. Standard Gen. L.P.*,
  2021 WL 2853438 (S.D.N.Y. July 8, 2021), *motion to certify appeal denied*,
  2022 WL 766244 (S.D.N.Y. Mar. 14, 2022) ..............................................3, 19, 22

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014).....................................................................................13

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018)......................................................................17

*Donoghue v. Casual Male Retail Grp., Inc.*,
  375 F. Supp. 2d 226 (S.D.N.Y. 2005)......................................................................19

*Donoghue v. Dicut, Inc.*,
  2002 WL 1728539 (S.D.N.Y. July 24, 2002) ..........................................................18

*Donoghue v. Ghauri*,
  2015 WL 3919120 (S.D.N.Y. June 25, 2015) ..........................................................17

*DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*,
  413 F. Supp. 3d 187 (S.D.N.Y. 2019)......................................................................18

*Marisol A. ex rel. Forbes v. Giuliani*,
  929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126
  F.3d 372 (2d Cir. 1997)..............................................................................................9

*Gratz v. Claughton*,
  187 F.2d 46 (2d Cir. 1951)........................................................................................19

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.*,
  156 F.3d 305 (2d Cir. 1998)......................................................................................11

*Huppe v. WCPS Intern. Inc.*,
  670 F.3d 214 (S.D.N.Y. 2012)..................................................................................16

*Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*,
  299 F.Supp.2d 262 (S.D.N.Y. 2004)...................................................................20, 21

*Levy v. Gen. Elec. Cap. Corp.*,
    2002 WL 1225542 (S.D.N.Y. June 4, 2002) ........................................................20

*Masterson v. NY Fusion Merch., LLC*,
    300 F.R.D. 201 (S.D.N.Y. 2014) ...........................................................................9

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010) ................................................................................ *passim*

*Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*,
    763 F.3d 198 (2d Cir. 2014) .................................................................................15

*In re Petrobas Sec. Litig.*,
    150 F. Supp. 3d 337 (S.D.N.Y. 2015) ..................................................................13

*In re Platinum & Palladium Antitrust Litig.*,
    449 F. Supp. 3d 290 (S.D.N.Y. 2020) ....................................................................9

*Rubenstein v. Cosmos Holdings, Inc.*,
    2020 WL 3893347 (S.D.N.Y. July 10, 2020) .............................................10, 15, 16

*Rubenstein v. Knight-Swift Transp. Holdings Inc.*,
    492 F. Supp. 3d 206 (S.D.N.Y. 2020) ..................................................................11

*S.E.C. v. Compania Internacional Financiera S.A.*,
    2011 WL 3251813 (S.D.N.Y. July 29, 2011) .......................................12, 13, 16, 18

*S.E.C. v. Wyly*,
    788 F. Supp. 2d 92 (S.D.N.Y. Mar. 31, 2011) .....................................................13

*SEC v. Maillard*,
    2014 WL 1660024 (S.D.N.Y. Apr. 23, 2014) ......................................................13

*SEC v. Revelation Capital Management, Ltd.*,
    246 F. Supp. 3d 947 (S.D.N.Y. 2017) .............................................................14, 16

*SEC v. Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013) ..................................................................17

*Tex. Int'l Airlines v. Nat'l Airlines, Inc.*,
    714 F. 2d 533 (5th Cir. 1983), *cert. denied*, 465 U.S. 1052 (1984)........................21

*Wagman v. Astle*,
    380 F. Supp. 497 (S.D.N.Y. 1974)...........................................................14, 17, 18

**Statutes**

Securities Exchange Act, Sections 10(b), 16(b) .................................................. *passim*

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................9

**Other Authorities**

17 C.F.R § 240.16(b)–6 ...............................................................................1, 11, 20

17 C.F.R. § 240.16a–13 ...............................................................................................22

17 C.F.R. § 242.105 .............................................................................................14, 16

Arnold S. Jacobs, *Section 16 of the Exchange Act* § 3:31 (2002)................................21

Peter Romeo & Alan Dye, *Comprehensive Section 16 Outline* 864 (5th ed. 2019).....................21

Plaintiff Canoo Inc. ("Canoo" or the "Company"), by its undersigned attorneys, submits this Memorandum of Law in Opposition to Defendant DD Global Holdings Ltd.'s ("DD Global") Motion to Dismiss the Amended Complaint (ECF No. 17, the "Motion").[1]

## PRELIMINARY STATEMENT

Section 16(b) of the 1934 Securities and Exchange Act is a strict liability insider-trading statute that requires statutorily-defined corporate insiders to disgorge short-swing profits obtained by transacting in the securities of the corporation.  In the Amended Complaint, Canoo plausibly pleads that DD Global, an insider for the purposes of Section 16(b), executed matching sale and purchase transactions involving Canoo common shares, within a six-month period, and realized disgorgeable profits as a result of these transactions.  In its Motion to Dismiss, DD Global makes baseless (and unsupported) arguments that Canoo's claim under Section 16(b) should be dismissed as a matter of law because: (i) DD Global's transactions somehow do not involve securities listed on a domestic exchange, and therefore Section 16(b) is inapplicable; (ii) this Court lacks personal jurisdiction over DD Global, notwithstanding that its transactions were in U.S.-listed securities of a U.S. company and its contacts with the U.S. have been plentiful; (iii) Canoo does not plausibly plead disgorgeable profits here because profit supposedly can only be measured by reference to the purported "actual" prices in DD Global's private agreements; and (iv) equity dictates that the Court should not apply Section 16(b) because, among other reasons, DD Global's sale of shares was executed in compliance with a government agreement.  Each of DD Global's arguments in its Motion should be summarily rejected.

**Applicability of Rule 16(b)**:  DD Global argues that pursuant to *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), the Court should hold that Section 16(b) is inapplicable

---

[1] Submitted herewith is the declaration of Hector Ruiz, sworn to on October 4, 2022 ("Ruiz Dec.").

to DD Global's November 2021 sale of Canoo common shares (shares that are solely listed on a United States exchange) and March 2022 acquisition of the beneficial interests in Canoo common shares (through a participation note), because the Court should somehow consider these transactions to be not "domestic."  However, these transactions (in which Canoo sold and bought tens of millions of U.S.-listed common shares) indisputably meet at least one prong of the *Morrison* test—"whether the purchase or sale . . . involves a security listed on a domestic exchange[.]"  *Id.* at 269–70.  DD Global's further arguments about extraterritoriality are off-point and incorrect.

      **Personal Jurisdiction**:  For similar reasons that the transactions at issue do not implicate an extraterritorial application of Section 16(b), exercising personal jurisdiction over DD Global is appropriate here.  As detailed herein, DD Global was the long-time controlling shareholder of Canoo, an American company; its principal traveled to the United States for Canoo business; and the transactions at issue involved a transaction with a Delaware limited liability company by which DD Global sold 35 million of its U.S.-listed Canoo common shares and a transaction in which DD Global purchased the beneficial interests in 10.5 million U.S.-listed Canoo common shares.  (*See infra* pp. 13-14.)  That DD Global would be haled into court in the United States for its conduct here was completely foreseeable.

      **Sufficiency of Pleading**:  Notwithstanding its cries of a "money grab" and an "undeserved windfall," DD Global concedes the presence of each element of liability of a Section 16(b) claim here.  DD Global takes issue only with whether Canoo has plausibly pled the existence of disgorgeable profits.  Because Canoo has pled in the Amended Complaint good reason that the purported prices at which DD Global sold Canoo common shares in November 2021 and purchased beneficial interests in shares in March 2022 are not reflective of DD Global's "profits"

under Section 16(b), Canoo has met its pleading burden.  That the Amended Complaint also alleges that disgorgeable profits can and should be calculated using the market trading prices of Canoo common shares on the dates of the subject transactions presents an ultimate issue for the Court to consider at a later point in the case.

**Equitable Excuse from Liability**:  Lastly, DD Global pleads for the Court to dismiss this case as a matter of law, notwithstanding that all elements of a Section 16(b) claim are adequately pled, due to the circumstances surrounding the transactions.  Such equitable pleas are routinely rejected by courts, and this case presents no circumstance that requires a different outcome.  "Section 16(b) operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition."  *Chechele v. Standard Gen. L.P.*, 2021 WL 2853438, at *12 (S.D.N.Y. July 8, 2021), *motion to certify appeal denied*, 2022 WL 766244 (S.D.N.Y. Mar. 14, 2022).  Canoo has stated a claim under Section 16(b).  Allegedly pure of heart or not, DD Global's liability is adequately pled under the statute.

## STATEMENT OF RELEVANT FACTS

Canoo is a Delaware corporation, headquartered in Torrance, California, and is an innovative manufacturer of consumer and commercial vehicles.  (Am. Compl. ("AC") ¶ 6.)  Since December 2020, Canoo has been a public company; its common shares have been listed and traded on the NASDAQ Exchange (and only on the NASDAQ Exchange), which is located in New York, under the ticker symbol NASDAQ:GOEV.  (AC ¶¶ 10, 17; Ruiz Dec. ¶ 2.)

Defendant DD Global is an exempted company organized with limited liability in the Cayman Islands, with a registered address in Grand Cayman and headquarters in Hong Kong.  (AC ¶ 7.)  Li Pak Tam is the principal and controlling member of DD Global.  (*Id.*)

### A. **DD Global Funds and Controls Canoo**

Li Pak Tam was one of the two primary funders of Canoo (then Evelozcity Holdings Ltd.) when the Company was founded in 2017. (*Id.* ¶ 12.) Li Pak Tam funded Canoo through DD Global and its affiliates. (*Id.* ¶ 13.) By the end of 2018, DD Global owned 80% of the issued share capital of Canoo and was entitled to appoint four of the seven members of Canoo's board of directors. (*Id.* ¶ 15.) As by far the largest shareholder of Canoo, and with control over the Company's board of directors, DD Global and Li Pak Tam had considerable power and control over Canoo. (*Id.* ¶ 15.) In light of DD Global's dominant equity interest in Canoo, DD Global and Li Pak Tam regularly received updates regarding the Company from Canoo's management team and Li Pak Tam traveled to the United States to meet with the Company's CEO and Chairman to discuss the Company. (*Id.* ¶ 16.)

### B. **Canoo Goes Public on the NASDAQ and the NSA Is Entered**

In September 2020, Canoo announced a merger with special purpose acquisition company Hennessy Capital Acquisition Corp. IV ("Hennessy"). (*Id.* ¶ 17.) On December 22, 2020, the merger with Hennessy was completed, and Canoo's common shares were listed and began publicly trading on the NASDAQ. (*Id.*)

On December 18, 2020, Canoo entered into a National Security Agreement (the "NSA") with DD Global, the Committee on Foreign Investment in the United States ("CFIUS"), and the U.S. Departments of Defense, Justice, and the Treasury as the CFIUS Monitoring Agencies. (*Id.* ¶ 19.) The NSA imposed certain conditions on DD Global and its affiliates. (*Id.* ¶¶ 19, 20.) Among other things, the NSA required DD Global and its affiliates to decrease its ownership of Canoo common shares to less than 30%, 25%, 15%, or 10% as of September 15, 2021, November 30, 2021, January 1, 2022, or February 28, 2022, respectively, of the fully diluted shares of Canoo.

(*Id.* ¶ 20.)  As of the effective date of the NSA, DD Global and affiliates owned approximately 26.4% of the fully diluted common shares of Canoo.  (*Id.* ¶ 20.)

### C.  **The November 22, 2021 Sale of Shares**

On October 6, 2021, DD Global entered into a stock purchase agreement with AFV Partners SPC-7 LLC ("AFV") (the "Stock Purchase Agreement").  Tony Aquila is the managing member of AFV and is also the current Chairman and CEO of Canoo.  (AC ¶ 21.)  AFV is a Delaware limited liability company.  (Stock Purchase Agreement, Ex. 1 to Saltzstein Decl.)  Under the initial terms of the Stock Purchase Agreement, DD Global agreed to sell 53,600,000 Canoo shares to AFV at a price of $6.53 per share.  The closing market price of Canoo stock on October 6, 2021 was $6.65 per share.  In the Stock Purchase Agreement, DD Global, among other things, agreed to a Delaware forum selection clause—waiving any objection based on personal jurisdiction, venue, or forum non conveniens as to any legal proceeding relating to the Stock Purchase Agreement.  (AC ¶ 22.)  Further, the Stock Purchase Agreement required that DD Global deliver its shares at Closing to Canoo's transfer agent.  (Stock Purchase Agreement § 3.2.)[2]

The Stock Purchase Agreement included certain "Conditions to Closing," which were to be met before the contemplated sale of shares under the Stock Purchase Agreement was to be executed upon.  (AC ¶ 21.)  As of November 19, 2021, the Conditions to Closing had not been met, and the contemplated sale of the Canoo shares to AFV had not yet been executed.  (*Id.* ¶ 23.)  On November 19, 2021, the Stock Purchase Agreement was amended by the parties thereto.  The primary amendment to the Stock Purchase Agreement was a reduction in the number of Canoo shares to be sold by DD Global to AFV from 53,600,000 to 35,273,268.  This was a very favorable amendment for DD Global, as the price of Canoo stock had increased substantially between

---

[2] Canoo's transfer agent has been located in New York since the company went public.  (Ruiz Dec. ¶ 3.)

October 6, 2021 and November 19, 2021.  The closing market price of Canoo stock on November 22, 2021 (the day the sale occurred) was $11.43 per share, and the stock had a VWAP of $11.26 per share.  Accordingly, in reducing the number of shares to be sold to AFV by 18,326,732 through this amendment to the Stock Purchase Agreement, DD Global received a benefit on paper of $86.69 million (18,326,732 x $4.73 per share).  (*Id.* ¶ 23.)[3]

On November 22, 2021, DD Global filed a Form 4, indicating that DD Global entered into a transaction on that date whereby it sold approximately 35,273,268 Canoo common shares to AFV (the "November 2021 Sale Transaction").  After giving effect to the November 2021 Sale Transaction, DD Global remained the "beneficial owner" of more than 10% of Canoo's total outstanding common shares.  (AC ¶ 24.)

### D.  The March 2022 Acquisition of Shares (through the Participation Note)

Less than six months after the November 22, 2021 transaction, on March 16, 2022, DD Global filed another Form 4, reporting simultaneous transactions on March 15, 2022 with two counterparties, including Bank J. Safra Sarasin AG ("Bank J. Safra").  The transactions, which were reported by DD Global as comprising a single, integrated transaction, included (i) DD Global's sale of 10,500,000 shares of Canoo common shares to Bank J. Safra, and (ii) DD Global's acquisition of 10,500,000 notional shares of Canoo common stock through a participation note with an unidentified counterparty.[4]  (AC ¶ 25.)

---

[3] DD Global's suggestion that the lockup agreement that accompanied the Stock Purchase Agreement somehow made the November 19, 2021 amendment unfavorable to DD Global (Mot. at 7 n. 5.) only, at best, creates issues of fact.

[4] In arguing for dismissal based on the purported impermissible extraterritorial application of Section 16(b), DD Global repeatedly states in its Memorandum of Law ("Mot.") that its participation note was with a foreign counter-party and its acquisition "occurred wholly outside the United States."  (Mot. at 2, 14, 17, 18.)  While with whom and where the acquisition of the participation note referencing Canoo's U.S.-listed common shares occurred is ultimately of little consequence for this Motion, as the jurisdictional issues raised by DD Global are met by, among other things, the fact that the participation note is a derivative agreement that is economically based on U.S.-listed securities (Canoo common shares), it is nevertheless the case that there are no allegations in the Amended Complaint or factual references in the exhibits attached to DD Global's moving papers that would suggest that the participation note was

According to DD Global's Form 4, its sale of shares to Bank J. Safra was made pursuant to a Securities Purchase Agreement, dated March 15, 2022 (the "Securities Purchase Agreement"). Under the Securities Purchase Agreement, DD Global purported to sell 10,500,000 Canoo common shares at a reference price of $6.53 per share. As reflected below, however, $6.53 is a price that was well above the market trading price of Canoo common shares on March 15, 2022. Simultaneous to this sale transaction on March 15, again according to the Form 4, DD Global subscribed for 10,500,000 notional shares (providing the beneficial interests in 10.5 million Canoo common shares to DD Global) under the participation note (the "March 2022 Acquisition Transaction," and together with the November 2021 Sale Transaction, the "Transactions at Issue") at a reference price of approximately $6.72 per share (again much higher than the March 15 market price for Canoo common shares). The simultaneous transaction provided for a net cost to DD Global of approximately $0.19 per share ($6.72 minus $6.53). (AC ¶ 26.)

DD Global's acquisition of 10.5 million notional shares through a participation note is a call equivalent position—treated for Section 16(b) purposes as a purchase of common shares. (AC ¶ 26; *infra* p. 14.) The reference prices of $6.53 per share in the Securities Purchase Agreement and $6.72 per share in the participation note could therefore have been set at any monetary amount, so long as the net cost to DD Global of approximately $0.19 per share for the simultaneous transactions was maintained, and it would not have made any economic difference to DD Global. The closing market price of Canoo stock on March 15, 2022, the day these simultaneous transactions were executed, was $5.57 per share, and the stock had a VWAP that day of $5.44 per

---

with a foreign counter-party or that its acquisition "occurred wholly outside the United States." As DD Global has not produced the participation note, the identity of the note's counterparty and other key details of the participation note are not pled or otherwise referenced in the record at this time, other than a brief summary in a Form 4 that does not identify the counterparty or include a reference to where the participation note occurred. (Ex. D to Saltzstein Decl.; AC ¶¶ 25, 26.) It is therefore improper for DD Global to make such unsupported factual statements in its purported Motion to Dismiss.

share—significantly lower than the reference prices agreed upon by DD Global and its counterparty in the participation note.  (AC ¶ 26.)

As of the time of execution of these simultaneous transactions on March 15, 2022, DD Global remained the "beneficial owner" of more than 10% of Canoo's total outstanding common shares.  (*Id.* ¶ 27.)

### E.   Canoo Receives Demands from Shareholders and Pursues Disgorgeable Profits from DD Global

Following DD Global's filing of its March 16, 2022 Form 4, Canoo received letters from attorneys on behalf of Canoo common shareholders demanding that the Company pursue disgorgement from DD Global pursuant to Section 16(b).  (*Id.* ¶ 40.)  On March 28, 2022, counsel for Canoo notified DD Global of Canoo's intent to investigate and pursue DD Global's short-swing profits and demanded that DD Global disgorge its profits to Canoo, which demand DD Global refused.  (*Id.* ¶¶ 41–43.)

Canoo initiated this action against DD Global on May 9, 2022.  In the Amended Complaint, Canoo seeks to recover the short-swing profits realized by DD Global in violation of Section 16(b), together with appropriate interest and costs of this lawsuit and any further relief the Court deems just and proper.  (*Id.* ¶ 53, Request for Relief.)  Canoo further pleads that disgorgeable profits should not be determined merely by reference to the per-share sale price supposedly received by DD Global in connection with the November 2021 Sale Transaction of Canoo common shares or the per-share reference price of the March 2022 Acquisition Transaction, as (i) the November 2021 sales price was reached as part of a negotiation with the counterparty in which DD Global was relieved of an $86.69 million market loss (*Id.* ¶ 23), and (ii) the reference price in the March 2022 participation note was a mere fictional price set by the counterparties to achieve a $0.19 net cost for simultaneous transactions.  (*Id.* ¶¶ 26, 33, 34.)  The Amended Complaint further pleads that

utilizing the market trading prices of Canoo common shares on the sale date (November 22, 2021) and the purchase date (March 15, 2022) is a plausible method for the Court to determine disgorgeable profits, and that such a calculation results in $61.11 million in disgorgeable profits. (*Id.* ¶¶ 34–38.)

## <u>APPLICABLE LEGAL STANDARDS</u>

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept as true the factual allegations set forth in the complaint and must draw all reasonable inferences in [plaintiff's] favor." *Marisol A. ex rel. Forbes v. Giuliani*, 929 F. Supp. 662, 673 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). The Court, therefore, "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* at 673 (citations omitted). In addition, "[a] court must construe pleadings liberally, and mere vagueness or lack of detail" will not suffice to grant a motion to dismiss. *Id.* (citation omitted). And, pertinent to certain assertions made by DD Global on this motion, "when a defense requires consideration of facts outside of the complaint, it is inappropriate to consider it on a motion to dismiss, unless 'the facts necessary to establish the defense are evident on the face of the complaint.'" *Masterson v. NY Fusion Merch., LLC*, 300 F.R.D. 201, 206 (S.D.N.Y. 2014).

In deciding a motion to dismiss challenging jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff's prima facie showing 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 318 (S.D.N.Y. 2020) (citation omitted).

## ARGUMENT

I.   **APPLYING SECTION 16(B) TO THE ALLEGED FACTS HERE DOES NOT CONSTITUTE AN EXTRATERRITORIAL APPLICATION OF THE STATUTE**

Neither the U.S. Supreme Court nor the Second Circuit has squarely addressed whether Section 16(b) applies extraterritorially.  Judge Failla, in *Rubenstein v. Cosmos Holdings, Inc.*, 2020 WL 3893347 at *10–11 (S.D.N.Y. July 10, 2020), recognized that there is no such higher court authority but nevertheless analyzed that case under the presumption that Section 16(b) does not apply extraterritorially.  Here, even assuming that Section 16(b) does not apply extraterritorially, DD Global's arguments are completely spurious, because the Transactions at Issue plainly involve securities that are listed only on a domestic exchange.  Section 16(b) therefore properly applies.

A.   **Section 16(b) Applies to the Transactions at Issue Because Canoo Common Shares Are *Listed* on a Domestic Exchange**

The Supreme Court in *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), described the test it adopted for Section 10(b) of the Securities Exchange Act to determine whether a law is being applied extraterritorially—"whether the purchase or sale is made in the United States, or *involves a security listed on a domestic exchange*."  *Id.* at 269–70 (emphasis added).  The Second Circuit has rightly viewed the *Morrison* transactional test as being two-pronged and imposing alternative requirements, with the first prong being whether a transaction involved a security listed on a domestic exchange.  *See Absolute Activist Value Master Fund v. Ficeto*, 677 F.3d 60, 69 n.4 (2d Cir. 2012) ("Of course, pursuant to the first prong of *Morrison*, § 10(b) does apply to transactions in securities that are listed on a domestic exchange.").

Here, where DD Global entered into private transactions by selling 35 million Canoo common shares (the November 2021 Sale Transaction) and by acquiring the beneficial rights to 10.5 million Canoo common shares (the March 2022 Acquisition Transaction), there is no

reasonable doubt that the Transactions at Issue meet the first prong of *Morrison*.  DD Global does not really attempt to suggest that the November 2021 Sale Transaction was foreign, nor could it (*see* AC ¶¶ 21–24; *see also* Mot. at 14); that transaction involved the sale of Canoo common shares (listed on the NASDAQ) to a Delaware LLC, pursuant to an agreement governed by Delaware law (with DD Global consenting to personal jurisdiction in Delaware), whereby DD Global delivered its shares to Canoo's New York transfer agent.  In its Memorandum of Law, with reference to the March 2022 Acquisition Transaction, DD Global seeks to badly distort *Morrison* by arguing that the inquiry is whether the Transactions at Issue *occurred on* a domestic exchange—suggesting, without any support, that private transactions involving U.S.-listed securities should somehow escape coverage of Section 16(b) because the transactions did not occur on an exchange.  (Mot. at 13–14.)  As reflected below, *Morrison* and decisions that have followed are to the contrary.

Through the March 2022 Acquisition Transaction, DD Global obtained the beneficial rights to 10.5 million Canoo common shares.  The participation note through which the beneficial interests in Canoo common shares were acquired is a call equivalent position, which is treated no differently for Section 16(b) purposes than a direct purchase of common shares.  17 C.F.R. § 240.16b-6 ("[t]he establishment of or increase in a call equivalent position . . . shall be deemed a purchase of the underlying security for purposes of section 16(b)"); *see also Rubenstein v. Knight-Swift Transp. Holdings Inc.*, 492 F. Supp. 3d 206, 217 (S.D.N.Y. 2020) (the result of the 1991 amendment to Section 16(b) is to make "holding derivative securities . . . functionally equivalent to holding the underlying equity securities" (quoting *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998)).[5]  Here, the participation note, even assuming that it was

---

[5] DD Global takes the untenable position that the first prong of *Morrison* cannot be satisfied because the participation note itself is not listed on a U.S. exchange.  Ironically, at the end of its Memorandum of Law, DD Global actually acknowledges that the March 2022 Acquisition Transaction (the participation note) as having "identical characteristics" to the November 2021 sale of common shares.  (Mot. at 22.)

executed overseas with a foreign counterparty,[6] still involves the acquisition of the beneficial rights to 10.5 million Canoo common shares that are listed only on the NASDAQ exchange. Imagine how the insider trading rules could be avoided if derivative securities like a participation note were not considered a purchase or sale of the underlying securities. The March 2022 Acquisition Transaction also meets the first prong of *Morrison*.

The applicable inquiry under the first prong of the *Morrison* test is whether the impacted security, here Canoo common shares, is "listed" on a domestic exchange. Judge Cote's decision in *S.E.C. v. Compania Internacional Financiera S.A.*, 2011 WL 3251813 (S.D.N.Y. July 29, 2011), is instructive. In that case, the SEC initiated an action against a Swiss money manager, alleging that the manager violated Section 10(b) in connection with its "purchase in the United Kingdom of contracts for difference ("CFDs") for the shares of Arch Chemicals ("Arch"), a United States company whose shares are traded on the New York Stock Exchange." *Id.* at *1. Much like with a participation note, "CFD purchasers acquire the future price movement of the underlying company's common stock (positive or negative) without taking formal ownership of the underlying shares." *Id.* at *3 (citation omitted). And, in *Compania*, Judge Cote rejected the very same argument that DD Global makes here: *Morrison* "never states that a defendant must itself trade in securities listed on domestic exchanges or engage in other domestic transactions." *Id.* at *6. "Even though [Defendant] may have engaged in this insider trading by trading CFDs in London that were tied to transactions on the NYSE in Arch's domestic securities, this does not negate the fact that its alleged deceptive conduct involved securities listed on a domestic

---

[6] Again, there are no allegations in the Amended Complaint or documents in the record on this Motion that suggest that the participation note occurred overseas or that the counter-party was foreign. *Supra* p. 9, n.4.

exchange." *Id.* Section 10(b) therefore applied because the situation fell within the first prong of the *Morrison* transactional test. *See id.*

Thus, as in *Compania*, even assuming that the participation note was entered by DD Global overseas with a foreign counterparty, such transaction "involved securities listed on a domestic exchange," and the *Morrison* test is met—triggering the application of Section 16(b). *See id.*; *see also SEC v. Maillard*, 2014 WL 1660024, at *3 (S.D.N.Y. Apr. 23, 2014) (similar); *cf. S.E.C. v. Wyly*, 788 F. Supp. 2d 92, 120–121 (S.D.N.Y. Mar. 31, 2011) (finding that foreign trading of a swap agreement that referenced a domestic security to be purchased or sold by the broker of the swap agreement satisfied the requirement).

Ignoring the plain language of *Morrison*'s transactional test, DD Global cites several inapposite cases that stand for the proposition that application of Section 10(b) is impermissible when the security impacted by the transaction is not listed or traded in the United States but is instead traded on a foreign exchange.[7]  These cases obviously have no application here, where the shares of Canoo common stock involved in the Transactions at Issue are only listed on a domestic exchange.

### B.   DD Global's Additional Arguments Are Irrelevant and, in Any Event, Incorrect

As established above, the November 2021 Sale Transaction and the March 2022 Acquisition Transaction both meet the first prong of the *Morrison* test, as the transactions involved securities listed on a U.S. exchange.  DD Global nevertheless makes the irrelevant argument under

---

[7] *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014) (holding Section 10(b) did not apply where foreign plaintiffs purchased the company's shares that were listed on foreign exchanges); *In re Petrobas Sec. Litig.*, 150 F. Supp. 3d 337, 339–40 (S.D.N.Y. 2015) (holding that Section 10(b) did not apply where Notes were "listed or intended to be listed on the New York Stock Exchange" but traded instead on a foreign over-the-counter bond market); *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 473 (S.D.N.Y. 2010) (holding that Section 16(b) did not apply where purchases were made on French foreign stock exchange).  (Mot. at 13.)

the second prong of *Morrison* that Section 16(b) liability can only arise if the second of the two matching transactions, (here, the March 2022 Acquisition Transaction), is "domestic," and the first transaction (here, the November 2021 Sale Transaction) is not pertinent to the analysis.  (*See* Mot. at 14–15.)  The Court need not reach this issue, because the first prong ends the inquiry,[8] but DD Global's second-transaction-only theory of *Morrison*'s second prong should not be credited.

In arguing that only the March 2022 Acquisition Transaction is relevant, DD Global relies exclusively on Judge Caproni's decision in *SEC v. Revelation Capital Management, Ltd.*, 246 F. Supp. 3d 947 (S.D.N.Y. 2017).  (Mot. at 15.)  In *Revelation Capital Management*, Judge Caproni assessed the application of Rule 105 of Regulation M to a defendant's short sale and purchase of a company's shares listed on the New York Stock Exchange in connection with defendant's motion for summary judgment.  *See Revelation Cap. Mgmt., Ltd.*, 246 F. Supp. 3d at 950–51.  The Court held as a matter of first impression that, in the Rule 105 context, at least the purchase needed to be a "domestic transaction" in order for the second prong of the *Morrison* transactional test (the purchase or sale was made in the United States) to be satisfied.  *Id.* at 953.  Judge Caproni, however, explicitly based her decision on the unique aspects of Rule 105, including that:

> "[t]he purpose of the Rule is to protect the issuer from having its offering proceeds depressed by short selling activity immediately before the offering.  That goal gives the SEC an interest in protecting a United States offering from foreign short sellers; the Court sees no interest of the SEC in protecting Canadian issuers from American short sellers."

*Id.* at n.10.

The purpose of Section 16(b) compels a different analysis and result.  Section 16(b) is focused on preventing insider trading and protecting American investors and their "confidence in the integrity of the market."  *Wagman v. Astle*, 380 F. Supp. 497, 501 (S.D.N.Y. 1974).  Rather

---

[8] "[T]he *Morrison* test is disjunctive.  If a transaction satisfies the first prong of *Morrison*, the second prong need not be examined and vice versa."  *Revelation Cap. Mgmt., Ltd.*, 246 F. Supp. 3d at 952 n.8 (internal citation omitted).

than engage in *Revelation Capital Management*'s purchase analysis, which no court has ever adopted in the Section 16(b) context, the proper analysis would more likely resemble *Morrison*'s "domestic transaction" test as set forth in *Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*, 763 F.3d 198 (2d Cir. 2014). *Parkcentral* created a flexible, purposive test for determining whether a transaction was domestic in the Section 10(b) context or whether it was "so predominantly foreign as to be impermissibly extraterritorial." *Id.* at 216. In *Parkcentral*, the Second Circuit found that the claims were foreign because they concerned "statements made primarily in Germany with respect to stock in a German company traded only on exchanges in Europe." *Id.* The Second Circuit cautioned, however, that courts should engage in a fact-based inquiry that could adapt to address the individual situations before them. *Id.* at 217.

Again, if the second prong of *Morrison* were relevant here, rather than engage in DD Global's second-transaction-only analysis, it would be appropriate instead to examine the totality of the facts around the two Transactions at Issue and determine if they are "predominantly foreign." Plainly, they are not, as Canoo has alleged, among other things, that (i) Canoo is a U.S. company (AC ¶ 6); (ii) Canoo's common shares are listed on a U.S. stock exchange (*id.* ¶ 10); (iii) DD Global sold 35 million Canoo common shares in a purely domestic transaction in November 2021 (*id.* ¶¶ 23–24); and (iv) DD Global acquired beneficial rights to 10.5 million Canoo common shares in the March 2022 Acquisition Transaction (*id.* ¶¶ 25–26).

In *Cosmos Holdings*, a Section 16(b) decision that DD Global attempts to distinguish (Mot. at 16), the defendant insider claimed that "a Section 16(b) violation cannot be alleged because the provision does not apply extraterritorially" when one of the matching transactions occurred in Greece. *See id.* at *10. Judge Failla found that the transactions were domestic under the first prong of the *Morrison* test because they involved a security that allegedly traded on a domestic

exchange.  *Id.* at *11.  Judge Failla also found, however, that the second *Morrison* prong additionally applied.  Although one of the two subject transactions occurred in Greece, the court found that it was plausible that "even under *Morrison*, only one half of the purchase-and-sale or sale-and-purchase transaction that resulted in a short-swing profit would need to occur in the United States for the presumption against extraterritoriality to be satisfied."  *Id.*  Because the defendant had not offered a sufficient explanation to the contrary, the court found that Section 16(b) was applicable.  Consistent with *Cosmos*, which postdates Judge Caproni's decision in *Revelation Capital Management*, the November 2021 Sale Transaction alone (which undisputedly occurred in the United States) renders the two Transactions at Issue here domestic.

DD Global argues in its Motion that *Revelation Capital Management*'s Rule 105 second-transaction-only analysis is required because Section 16(b) is "focus[ed]" on profits and profits "can exist only after both transactions have occurred."  (*See* Mot. at 14.)  To the contrary, Section 16(b) is "focused" on preventing insider trading, not the disgorgement of profits generally.  *Huppe v. WCPS Intern. Inc.*, 670 F.3d 214, 217–18 (S.D.N.Y. 2012).  The application of Section 16(b) must be interpreted broadly with that purpose in mind:

> [Defendant's] interpretation of *Morrison* would create a dramatically narrower view of [Section 16(b)] liability, not only limiting its extraterritorial application, but also precluding actions against persons who themselves did not trade in securities. These would include individuals engaged in a manipulative or deceptive device or contrivance. . . .  There is no reason to find that such a restriction on federal securities laws is required by *Morrison*. Indeed, that reading would be inconsistent with the Supreme Court's expressed intention in *Morrison* to adopt a test faithful to the words of the securities laws and the regulations thereunder.

*Compania*, 2011 WL 3251813, at *7.

## II.   THIS COURT HAS PERSONAL JURISDICTION OVER DD GLOBAL

For many of the same reasons that the Transactions at Issue do not implicate an impermissible extraterritorial application of Section 16(b), this Court has personal jurisdiction over

DD Global.  It is well established that "a district court may exercise its personal jurisdiction in a securities action if the defendant's activities could reasonably be expected to be visited upon United States shareholders." *Donoghue v. Ghauri*, 2015 WL 3919120, at *3 (S.D.N.Y. June 25, 2015) (citation omitted).  In *Ghauri*, the Court found that the "exercise of jurisdiction [in a Section 16(b) case] over a defendant who trades shares of a U.S. corporation, on a U.S. stock exchange, is proper even where the defendant has no other connections to the United States."  *Id.*[9]  That is because, as here, "shares of [the company] are owned by citizens of the United States, and [Defendant's] alleged violation created a near certainty that shareholders in the United States would be adversely affected."  *Id.* (citation omitted).  Because DD Global's massive insider transactions here were potentially harmful to shareholders of Canoo's U.S.-listed shares, this Court has personal jurisdiction over DD Global.

In its Memorandum of Law, DD Global relegates *Ghauri* to a footnote, attempting to distinguish it on the basis that the Pakistani defendant there executed his trades on a U.S. stock exchange versus the private Transactions at Issue here.  (Mot. at 17 n.10.)  But, as set forth above, this is a distinction without a difference, as Section 16(b) is every bit as applicable to violative private transactions as those executed on a domestic exchange.  (*Supra* p. 14.)  And *Wagman*, 380 F. Supp. at 502, far from being "instructive" (Mot. at 19), is unhelpful to DD Global's cause: there the company was Canadian, not American, and the decision is based on an outdated, 50-year-old understanding of personal jurisdiction jurisprudence.  For example, the *Wagman* court based its personal jurisdiction decision on a pre-*Morrison* conception of extraterritoriality, which required

---

[9] *Cf. SEC v. Straub*, 921 F. Supp. 2d 244, 255 (S.D.N.Y. 2013) (personal jurisdiction in Securities Exchange Act case where "the Defendants here allegedly engaged in conduct that was designed to violate United States securities regulations and was thus necessarily directed toward the United States"); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 801 (S.D.N.Y. 2018) (personal jurisdiction in Securities Exchange Act case where conduct harmed U.S. purchasers and "[e]ven if the alleged scheme was not 'principally directed' at the United States, this alleged conduct 'was designed to violate United States securities regulations and was thus necessarily directed toward the United States'") (citation omitted).

that the "individual defendants have knowingly performed some act or caused some actual effect within this country." *Wagman*, 380 F. Supp. at 502.  This is no longer the law, and the case that *Wagman* cites for this proposition was explicitly abrogated by the Supreme Court in *Morrison*. *See Morrison*, 561 U.S. at 256.  Courts have long since found personal jurisdiction over foreign defendants for Section 16(b) violations based on transactions in U.S. securities.  *See Donoghue v. Dicut, Inc.*, 2002 WL 1728539, at *2 (S.D.N.Y. July 24, 2002) (finding personal jurisdiction over Canadian defendant where there was a "near certainty that United States shareholders…would be adversely affected"); *cf. Compania Internacional*, 2011 WL 3251813, at *5 ("Chartwell's alleged insider trading adversely affected shareholders in the United States. . . . This alleged insider trading therefore provides the minimum contacts and reasonableness necessary for personal jurisdiction.").

There can also be no question that minimum contacts is satisfied here.  "Because the Exchange Act authorizes worldwide service of process, the relevant contacts for purposes of the 'minimum contacts' analysis are those with the United States as a whole."  *DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 217 (S.D.N.Y. 2019) (citation omitted).  Here, as set forth in the Statement of Relevant Facts, DD Global was the long-time controlling shareholder of this American company, its principal traveled to the United States for Canoo business, and the Transactions at Issue involve a purely domestic transaction with a Delaware LLC by which DD Global sold 35 million of its U.S.-listed Canoo common shares and a transaction in which DD Global purchased the beneficial interests in 10.5 million U.S.-listed Canoo common shares.  (*Supra* pp. 13-14.)  It was thus foreseeable that DD Global would be haled into court here for the Transactions at Issue.

### III.     CANOO HAS ADEQUATELY PLED A SECTION 16(B) CLAIM

DD Global concedes that all liability elements of a Section 16(b) claim are adequately pled here.  DD Global does not dispute that it executed matching purchase and sale transactions involving Canoo common shares when it entered the November 2021 Sale Transaction (Mot. at 5–7), and the March 2022 Acquisition Transaction (Mot. at 7-8), that these matching transactions took place within a six-month period (*see, e.g.*, Mot. at 6–8), and that DD Global was an insider— a shareholder that owned more than 10 percent of Canoo's common shares—when the Transactions at Issue were executed (*see, e.g.*, Mot. at 3–4).  DD Global only contends that Canoo has not plausibly pled the existence of disgorgeable profits.  DD Global is again incorrect.

Canoo has plausibly pled in the Amended Complaint the existence of disgorgeable profits under Section 16(b)—which is not relegated to merely tallying the defendant's per-share sale and purchase prices.  *See Chechele*, 2021 WL 2853438, at *10 ("[A]n individual may be charged with a Section 16(b) profit even when . . . trading actually resulted in a substantial financial loss.") (citation omitted); *Donoghue v. Casual Male Retail Grp., Inc.*, 375 F. Supp. 2d 226, 237 (S.D.N.Y. 2005) (citing *Gratz v. Claughton*, 187 F.2d 46, 51–52 (2d Cir. 1951)) (computation of disgorgeable profits "must be done in such a way as to increase the recoverable profits to the greatest possible amount").  In the Amended Complaint, Canoo seeks to recover the short-swing profits realized by DD Global that are allowable under Section 16(b) (together with appropriate interest and costs of this lawsuit and any further relief the Court deems just and proper).  (AC ¶ 53, Request for Relief.) DD Global argues that it did not earn a profit on the Transactions at Issue because the per-share price it received for selling its shares in the November 2021 Sale Transaction ($6.53 per share) was less than the price in the participation note from which the March 2022 Acquisition Transaction derives ($6.72 per share).  (Mot. at 9.)  Canoo pleads in the Amended Complaint, however, that disgorgeable profits should not be determined here merely by reference to the sale

price supposedly received by DD Global for its November 2021 Sale Transaction of Canoo common shares, or by utilization of the per-share reference price of the March 2022 participation note. This is because the November 2021 Sale Transaction terms were reached as part of a negotiation with DD Global's counterparty in which DD Global was relieved of a $86.69 million market loss (AC ¶ 23)—thus, DD Global's insistence that the per-share price of $6.53 should be utilized to determine Section 16(b) profit necessarily would fail to take into account this circumstance. And the Amended Complaint pleads that the reference price in the March 2022 participation note was a mere fictional price agreed upon by the counterparties to achieve a $0.19 net cost for simultaneous transactions (*Id.* ¶¶ 26, 33, 34), and therefore, there is no reason to utilize that price in calculating disgorgeable profits. As it is plausible that the November sale price should be considered for Section 16(b) purposes to be substantially higher than $6.53 and the March purchase price lower than $6.72, Canoo has adequately pled a disgorgeable profit for Section 16(b) purposes.

The Amended Complaint further pleads that utilizing the market trading prices of Canoo common shares on November 22, 2021 and March 15, 2022 is a plausible method for the Court to determine disgorgeable profits (at the appropriate point in the case). (AC ¶¶ 34–38.) DD Global inappropriately argues against this theory of damages as a basis for a motion to dismiss. DD Global's arguments to exclude market price damages as a theory is premature in this case and is, in any event, incorrect. The use of market trading prices is one conceivable and accepted way that disgorgeable profits can be measured. *See, e.g.*, *Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*, 299 F.Supp.2d 262, 270–71 (S.D.N.Y. 2004) (finding that the "short-swing profits under Rule 16b-6(c)(2) are to be determined by reference to the price of the underlying security and 'not of the actual securities involved in the purchase and sale'"(citation omitted)); *see also Levy v. Gen.*

*Elec. Cap. Corp.*, 2002 WL 1225542, at *2 (S.D.N.Y. June 4, 2002).  *See also* Peter Romeo & Alan Dye, *Comprehensive Section 16 Outline* 864 (5th ed. 2019) (similar); Arnold S. Jacobs, *Section 16 of the Exchange Act* § 3:31 (2002) ("a court should try to determine the trading price of the underlying security at the moment the derivative security was purchased or sold.").[10]

DD Global argues that the difference in market price is a *cap* on disgorgeable profits.  (Mot. at 21 n.16.)  Agreed—and it will remain to be seen whether that cap turns out to be the best way to measure disgorgeable profits here.

## IV.   DD GLOBAL'S EQUITABLE ARGUMENT THAT THE COURT SHOULD DISREGARD SECTION 16(B)'S APPLICATION HERE IS UNAVAILING

Finally, DD Global suggests that, notwithstanding that each of the elements of a Section 16(b) claim are adequately pled here, the circumstances surrounding the claim somehow justify the Court's dismissal of this case as a matter of law.  There is no support for such an outcome. Numerous insiders have sought to dismiss a Section 16(b) lawsuit on equitable grounds, and nearly all have failed.  *See* Romeo & Dye, 9.04 [3] ("In almost all instances, the courts have rejected equitable defenses to Section 16(b) claims."); *Tex. Int'l Airlines v. Nat'l Airlines, Inc.*, 714 F. 2d 533, 537 (5th Cir. 1983), *cert. denied*, 465 U.S. 1052 (1984) ("allowance of equitable defenses in section 16(b) cases would only serve to thwart the remedial purpose of the statute").  The circumstances here certainly are not of such a nature to justify outright dismissal.

DD Global misleadingly asserts that because the November 2021 Sale Transaction was done in compliance with the NSA, it should escape Section 16(b) liability.  The NSA, however, did not compel DD Global to acquire the beneficial interests in 10.5 million shares through the

---

[10] The SEC's decision to "tie [short-swing profits] to the market price of the underlying security was predicated on a strong desire to avoid the 'battle of the experts' in every case."  *Segen*, 299 F.Supp.2d at 270 (referencing SEC Release No. 34-26333, 53 Fed. Reg. 49997, 5009 (Dec. 13, 1988)).  Tying short-swing profits to market price also prevents insiders from manipulating the "prices" for instruments when the stock is not purchased directly from an exchange.

March 2022 Acquisition Transaction.  DD Global does not even explain why it entered into the March 2022 Acquisition Transaction and acquired the beneficial interests in 10.5 million shares, other than flippantly proclaiming that it was "economically efficient."[11]  Further, DD Global's argument that Section 16(b) liability should not attach here because the March 2022 Acquisition Transaction involved simultaneous transactions that purportedly resulted in no change that day in DD Global's pecuniary interest is a red herring.  The Transactions at Issue here do not include the March 2022 sale of shares to Bank J. Safra, rather the matching transactions Canoo has pled are the November 2021 Sale Transaction and the March 2022 Acquisition Transaction, whereby DD Global acquired the beneficial interests in 10.5 million Canoo common shares.  And the transactions that DD Global entered on March 15, 2022 were readily separable transactions, of different types, artificially set at different purported prices.  The sale of common shares and the acquisition of a participation note are not the types of transactions that Rule 16a-13 would exempt from liability.  *See Chechele*, 2021 WL 2853438, at *8, 10 (referencing examples of potentially exempt transactions as "(i) a distribution of shares from a trust to an insider-beneficiary of the trust and (ii) a distribution of securities from a limited partnership to its general partner," and rejecting separately executed stock sales and swap transactions as being exempt).

DD Global's suggestion that the purpose and goals of Section 16(b) would not be met by sustaining a claim here is baseless.  DD Global bought and sold tens of millions of U.S.-listed shares of the same U.S. issuer within a six-month window—this is a massive violation of Section 16(b).  There is no doubt that the elements of the claim are met here.  There is no equitable reason to excuse DD Global's conduct as a matter of law.

---

[11] Similarly, DD Global's assertions that the NSA somehow assured that it was not transacting while in actual possession of insider information is completely irrelevant and unsupported.  (Mot. at 25.)

## <u>CONCLUSION</u>

For the foregoing reasons, Canoo respectfully requests that the Court deny DD Global's

Motion to Dismiss in its entirety.


Dated:  New York, New York
        October 4, 2022

                                        Respectfully submitted,

                                        KIRKLAND & ELLIS

                                         /s/  *Aaron H. Marks*

                                        Aaron H. Marks, P.C.
                                        Stephanie Shimada
                                        Kirkland & Ellis LLP
                                        601 Lexington Avenue
                                        New York, New York 10022
                                        Phone: (212) 446 4856
                                        Fax: (212) 446 4900
                                        aaron.marks@kirkland.com
                                        stephanie.shimada@kirkland.com

                                        *Counsel for Plaintiff Canoo Inc.*

23