UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/21/2023

| | |
|---|---|
| CANOO INC., | |
| Plaintiff, | |
| -against- | |
| DD GLOBAL HOLDINGS LTD., | |
| Defendant. | |

1:22-cv-03747-MKV

**OPINION AND ORDER
DENYING MOTION
TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Canoo Inc. ("Canoo") brings this action against Defendant DD Global Holdings Ltd. ("DD Global"), alleging that DD Global violated Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)" and the "Exchange Act"), 15 U.S.C. § 78p(b). Canoo seeks disgorgement of alleged "short-swing" profits it claims DD Global realized in connection with certain private transactions in Canoo securities. DD Global now moves to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim. For the following reasons, the Motion to Dismiss is DENIED.

**BACKGROUND[1]**

Canoo is a Delaware corporation headquartered in California that manufactures electric vehicles. FAC ¶ 6. DD Global was an early investor in Canoo that, at the end of 2018, owned 80% of Canoo's issued share capital and was entitled to elect a majority of its board. FAC ¶ 15. In December 2020, Canoo merged with a special purpose acquisition company and was listed on the NASDAQ as a public company. FAC ¶ 17. The merger, which reduced DD Global's governance rights and diluted DD Global's principal's interest in Canoo, was intended in part to

---

[1] This Opinion draws its facts from the First Amended Complaint [ECF No. 15] ("FAC"), the well-pleaded facts of which are taken as true and construed in favor of Canoo for purposes of this Motion. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020).

address national security concerns raised by the Committee on Foreign Investment in the United States ("CFIUS").  FAC ¶ 18.  Shortly after the merger, Canoo entered into a National Security Agreement ("NSA") with DD Global, CFIUS, and the Departments of Defense, Justice, and the Treasury.  FAC ¶ 19.  The NSA required DD Global and its affiliates to reduce their ownership of Canoo to below 10% of Canoo's fully diluted shares, incrementally by certain target dates, or else transfer all of their Canoo shares to a voting trust.  FAC ¶ 20.

In October 2021, DD Global entered into a purchase agreement in which it agreed to sell some of its Canoo shares to a Delaware LLC, AFV Partners SPC-7 LLC ("AFV Partners"), of which Canoo's Chairman and CEO was a managing member.  FAC ¶ 21.  On November 22, 2021, DD Global completed this transaction and sold 35,273,268 Canoo shares to AFV Partners at a $6.53 share price (the "November 2021 Sale").  FAC ¶¶ 23–24.  Canoo's closing price on the NASDAQ on this date was $11.43 per share, and the stock had a volume-weighted average price ("VWAP") of $11.26 per share.  FAC ¶¶ 23, 35.  After the November 2021 Sale, DD Global remained a beneficial owner of more than 10% of Canoo's outstanding common stock.  FAC ¶ 24.

On March 15, 2022, while still a beneficial owner of more than 10% of Canoo's common stock, DD Global entered a transaction in which it sold 10,500,000 Canoo common shares to Bank J. Safra Sarasin AG ("Bank J. Safra").  FAC ¶¶ 25, 27.  DD Global simultaneously acquired 10,5000,000 notional shares of Canoo common stock through a participation note with an unidentified counterparty (the "March 2022 Acquisition").  FAC ¶ 25.  The purchase agreement for these transactions indicated that the shares were sold at a reference price of $6.53 per share and acquired at a reference price of approximately $6.72 per share.  FAC ¶ 26.  On the date of these transactions, Canoo closed at $5.57 per share and had a VWAP of $5.44 per share.  FAC ¶¶ 26,

36.  At the completion of the March 2022 Acquisition, DD Global's ownership in Canoo was less than 10% of Canoo's outstanding common stock, in compliance with the NSA.  FAC ¶ 28.

Following DD Global's filing of a Form 4 with the SEC in connection with the March 2022 transactions, Canoo's stockholders submitted a demand to Canoo that the company pursue disgorgement of short-swing profits from DD Global.  FAC ¶ 40.  Canoo notified DD Global of its intent to pursue these profits under Section 16(b).  FAC ¶ 41.  DD Global disputed the allegations and refused to remit profits.  FAC ¶¶ 42–43.  This litigation followed.

## PROCEDURAL HISTORY

Canoo initiated this action, asserting a single claim against DD Global for recovery of short-swing profits under Section 16(b).  [ECF No. 1].  DD Global filed a pre-motion letter in anticipation of its motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6).  [ECF No. 11].  Canoo opposed [ECF No. 12], and in response, with leave of Court, filed the operative FAC, again asserting a single Section 16(b) claim.  [ECF No. 15].  DD Global now moves to dismiss the FAC pursuant to Rule 12(b)(2), claiming lack of personal jurisdiction, and Rule 12(b)(6), for failure to state a claim.  [ECF No. 17] ("Def. Mem.").  Canoo opposed the Motion to Dismiss.  [ECF No. 19] ("Pl. Opp.").  DD Global filed a reply brief in further support of its Motion.  [ECF No. 21] ("Def. Reply").

## LEGAL STANDARD

### I.    Rule 12(b)(2): Lack of Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Canoo, as plaintiff, must make a *prima facie* showing that the Court has personal jurisdiction over DD Global.  *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).  Such a showing requires "legally sufficient allegations of jurisdiction," including "an averment of facts that, if credited[,]

would suffice to establish jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (internal quotation marks and ellipsis omitted). "In evaluating whether the requisite showing has been made," the Court must "construe the pleadings and any supporting materials in the light most favorable" to Canoo. *Licci ex rel. Licci v. Lebanese Canadian Bank*, *SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

## II.    Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss pursuant to Rule 12(b)(6), Canoo must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the FAC contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## DISCUSSION

## I.    Canoo Makes a *Prima Facie* Showing of Personal Jurisdiction

"[T]he Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment." *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990). Thus, Canoo must make a *prima facie* showing that DD Global has sufficient minimum contacts with the forum, such that the Court's exercise of jurisdiction over DD Global does not offend traditional notions of fair play and substantial justice. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (the Court must conduct both a minimum contacts and a reasonableness inquiry). In Exchange Act

cases, "the relevant forum is the United States, not a particular district." *Donoghue v. Dicut, Inc.*, No. 01 CIV. 10194 (NRB), 2002 WL 1728539, at *2 (S.D.N.Y. July 24, 2002); *accord Unifund*, 910 F.2d at 1033.   Under Second Circuit precedent, a district court may exercise personal jurisdiction in a securities action if the effects of the defendant's alleged conduct could "reasonably be expected to be visited upon United States shareholders." *Unifund*, 910 F.2d at 1033; *see Dicut*, 2002 WL 1728539, at *2; *Donoghue v. Ghauri*, No. 14 CIV. 6383 PAC, 2015 WL 3919120, at *3 (S.D.N.Y. June 25, 2015).

Canoo has met its *prima facie* burden of establishing personal jurisdiction over DD Global at this stage.

### A.  The "Minimum Contacts" Inquiry

The FAC adequately pleads that DD Global had minimum contacts with the United States. Canoo alleges that DD Global was a primary investor in Canoo, a Delaware company with its headquarters in California, and at one point owned 80% of Canoo's issued share capital and was entitled to elect a majority of Canoo's board.  FAC ¶¶ 6, 12–13, 15.  DD Global entered into the NSA with the United States government related to its Canoo holdings, and the FAC alleges that the liability-creating transactions were effected at least in part to maintain compliance with that agreement.  FAC ¶¶ 19–20, 28.  DD Global's contention that it initially invested in and primarily dealt with Canoo at the time Canoo was a Cayman company, Def. Mem. 17–18, (which is not alleged in the FAC) is of no moment.  The alleged liability-creating transactions occurred *after* Canoo's common stock was registered under Section 12(b) of the Exchange Act and began publicly trading on the NASDAQ.  FAC ¶¶ 17, 29.

The relevant transactions are, respectively, the November 2021 Sale of Canoo's U.S.-listed common shares to AFV Partners, and the March 2022 Acquisition in which DD Global acquired an interest in Canoo's U.S.-listed common shares in the form of a participation note.  FAC ¶¶ 23–

26.  The participation note, although itself a non-U.S. issued security, was acquired by DD Global (as it concedes) to maintain compliance with the NSA by changing its holding "from direct ownership of [Canoo] common stock, to an indirect interest in the same common stock" without altering its pecuniary position.  Def. Mem. 23.  With respect to each alleged liability-creating transaction, DD Global filed a Form 4 with the SEC, indicating its change in beneficial ownership. FAC ¶¶ 24–25.  The argument that these trades in Canoo stock were completed in private transactions, and not on a U.S.-based exchange, Def. Mem. 17–18, does not alter the jurisdictional analysis.  Section 16(b) applies equally to private transactions, and because Canoo is a U.S.-based company and its shares are traded exclusively on the NASDAQ, Canoo's conduct in allegedly realizing short-swing profits in violation of United States securities laws could reasonably have been expected to have adverse effects on United States shareholders of Canoo.  *See Unifund*, 910 F.2d at 1033; *Dicut*, 2002 WL 1728539, at *2.  That is so even if DD Global executed the relevant transactions entirely overseas.  *See S.E.C. v. Compania Internacional Financiera S.A.*, No. 11 CIV 4904 DLC, 2011 WL 3251813, at *5 (S.D.N.Y. July 29, 2011) (exercising personal jurisdiction over defendant that traded derivatives linked to common stock listed on the New York Stock Exchange ("NYSE"), even though trading "was entirely conducted in London") .

B.  The Reasonableness Inquiry

DD Global has not demonstrated that the Court's exercise of personal jurisdiction over it would be unreasonable.  To the contrary, DD Global's alleged conduct in transacting in shares of a publicly listed United States company, of which it was an insider, "are such that [DD Global] should reasonably anticipate being haled into court" in the United States.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Moreover, the "strong federal interests" in cases brought under the Exchange Act outweigh the burdens, if any, that would attend DD Global's having to litigate in this forum.  *Ghauri*, 2015 WL 3919120, at *4 (internal quotation marks

omitted); *see Dicut*, 2002 WL 1728539, at *3; *cf. Atlantica Holdings, Inc. v. BTA Bank JSC*, No. 13-CV-5790 JMF, 2015 WL 144165, at *5 (S.D.N.Y. Jan. 12, 2015) ("The reasonableness inquiry is largely academic in non-diversity cases brought under a federal law which provides for nationwide service of process because of the strong federal interests involved." (internal quotation marks and alteration omitted)).

Accordingly, Canoo has made a *prima facie* showing that the Court's exercise of personal jurisdiction over DD Global satisfies the minimum contacts and reasonableness inquiries and comports with due process. DD Global's Motion to Dismiss for lack of personal jurisdiction is denied.

## II.      Canoo States a Claim Under Section 16(b)

"To prevent insiders of a securities issuer from trading on material non-public information," Section 16(b) "imposes strict liability on certain insiders of an issuer, requiring them to disgorge to the issuer any profits they realize from short-swing trading in the issuer's securities." *Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 543 (2d Cir. 2020). Section 16(b) requires statutorily defined corporate insiders to disgorge profits realized from a matched purchase and sale[2] of securities of the corporation within a six-month period, "irrespective of intent or whether overall trading during that six months (*i.e.*, all sales and purchases combined) resulted in a loss." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998); *see* 15 U.S.C. § 78p(b). To state a Section 16(b) claim, Canoo must plausibly allege "(1) a purchase and (2) a

---

[2] Although Section 16(b) liability-creating transactions are often referred to as "matching," the statute "is not limited to the purchase and sale of the same certificates of stock," and "being able to match the particular shares bought or sold is wholly irrelevant . . . because of the fungible nature of shares of stock." *Gibbons v. Malone*, 703 F.3d 595, 601 (2d Cir. 2013) (cleaned up). For this reason, Canoo properly may allege that the first-in-time liability-creating transaction is DD Global's *sale*, rather than purchase, of its stock. *See Gratz v. Claughton*, 187 F.2d 46, 52 (2d Cir. 1951) ("[I]f one is looking for an equation of sale and purchase, one may take the same sale and look *forward* for six months for any purchase at a lower price." (emphasis added)); *accord In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021).

sale of securities (3) by . . . a shareholder who owns more than 10 percent of any one class of the issuer's securities (4) within a six-month period."  *Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 869 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Gwozdzinsky*, 156 F.3d at 308).

### A.  Applying Section 16(b) to Canoo's Allegations is Not an Impermissible Extraterritorial Application of the Statute

DD Global argues that the FAC fails because applying Section 16(b) to the alleged facts would constitute an impermissible extraterritorial application of the statute.[3]  Def. Mem. 11–12. No court has expressly held whether Section 16(b) applies extraterritorially.  *See Rubenstein v. Cosmos Holdings, Inc.*, No. 19 CIV. 6976 (KPF), 2020 WL 3893347, at *10 (S.D.N.Y. July 10, 2020).  Like other courts in this District to have confronted this absence of authority, the Court finds guidance in the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), which applied a presumption against extraterritoriality and held that Section 10(b) of the Exchange Act applies to "only transactions in securities listed on domestic exchanges, and domestic transactions in other securities."  *Id.* at 267; *see Cosmos Holdings*, 2020 WL 3893347, at *10.  *Morrison*'s test is disjunctive, requiring *either* that the claim is "predicated on a purchase or sale of a security listed on a domestic exchange *or* on a domestic purchase or sale of another security."  *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 200–01 (2d Cir. 2014) (emphasis added); *Cosmos Holdings*, 2020 WL 3893347, at *10 (*Morrison* requires "(i) a purchase or sale . . . made in the United States; or (ii) [a] transaction involv[ing] a security listed on a domestic exchange"); *accord Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d

---

[3] Although DD Global styles this argument as a threshold deficiency, the extraterritorial application of a statute "is a merits question" properly raised on a Rule 12(b)(6) motion.  *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010); *see Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 31 (2d Cir. 2010).

60, 66 (2d Cir. 2012); *S.E.C. v. Revelation Cap. Mgmt., Ltd.*, 246 F. Supp. 3d 947, 952 & n.8 (S.D.N.Y. 2017).

      DD Global argues that the alleged liability-creating transactions do not satisfy either prong of *Morrison*'s test because (1) they did not occur on a domestic exchange, and (2) the transaction that is the "focus" of Canoo's claim—the last-in-time March 2022 Acquisition—did not occur in the United States.  Def. Mem. 13–17.  As to DD Global's first argument, it is undisputed that Canoo's common stock that DD Global sold in the November 2021 Sale, and in which it later acquired an indirect interest in the March 2022 Acquisition, was at all relevant times "a security listed on an American stock exchange," the NASDAQ.[4]  *Morrison*, 561 U.S. at 273; *see* FAC ¶ 17. But this does not end the inquiry.  As DD Global correctly recognizes, in *City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), the Second Circuit rejected a "listing theory" interpretation of *Morrison*'s first prong, holding that "*Morrison* does not support the application of § 10(b) of the Exchange Act to claims by a foreign purchaser of foreign-issued shares on a foreign exchange simply because those shares are also listed on a domestic exchange."  *Id.* at 180–81.  But *City of Pontiac*'s holding is decidedly narrow.  The district courts that have applied its interpretation of *Morrison*'s first prong have done so in similar factual contexts—*i.e.*, to transactions in foreign-issued shares on foreign exchanges.  *See In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 339 (S.D.N.Y. 2015) (applying *City of Pontiac* to foreign debt securities that "were listed or intended to be listed" on the NYSE but "did not trade there"); *In re Barrick Gold Sec. Litig.*, No. 13 CIV. 3851 SAS, 2015 WL 1514597, at *16 (S.D.N.Y. Apr. 1, 2015) (dismissing claims related to transactions conducted on the Toronto Stock

---

[4] DD Global protests that the participation note acquired in the March 2022 Acquisition "is not listed for trading on a U.S. exchange."  Def. Mem. 14.  While this may be true, Canoo alleges, and DD Global elsewhere concedes, that the participation note gave DD Global a pecuniarily identical "indirect interest in the same common stock" it disposed of in the simultaneous March 2022 sale.  Def. Mem. 23; FAC ¶ 25.  Section 16(b) treats such a derivative security as the functional equivalent of the underlying equity security.  *See Gwozdzinsky*, 156 F.3d at 308.

Exchange in shares cross-listed on the NYSE); *see also In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 472–73 (S.D.N.Y. 2010) (prior to *City of Pontiac*, dismissing claims of plaintiffs who purchased, on a French exchange, shares that were listed on the NYSE).

By contrast, other courts in this District have explained that the basic textual import of *Morrison*'s first prong—that the transaction need only "*involve*[] a security listed on a domestic exchange," 561 U.S. at 270 (emphasis added)—remains the law outside of the specific factual context of *City of Pontiac*. As the district court in *United States v. Cornelson*, 609 F. Supp. 3d 258 (S.D.N.Y. 2022), recently explained, "*Morrison*'s first prong is satisfied where a defendant commits securities fraud *in connection with* a security that is registered on a domestic exchange, *regardless of whether the transaction is orchestrated abroad*." *Id.* at 264 (emphases added); *see id.* at n.3 (noting that *City of Pontiac* "clarified" *Morrison*'s first prong within the circumstances of that case); *Revelation Cap.*, 246 F. Supp. 3d at 953 (cabining *City of Pontiac* to the holding that "mere cross-listing on a domestic exchange of foreign-issued shares that are purchased by a foreign entity on a foreign exchange does not render the transaction 'domestic'"); *In re Shanda Games Ltd. Sec. Litig.*, No. 1:18-CV-02463 (ALC), 2019 WL 11027710, at *4 (S.D.N.Y. Sept. 30, 2019) (explaining that "*Pontiac* involved a § 10(b) claim entailing a foreign purchaser, foreign issued shares, and a foreign exchange," and that a case in which "shares were only listed on a domestic exchange" is distinguishable), *adhered to on reconsideration sub nom. In re Shanda Ltd. Sec. Litig.*, No. 1:18-CV-02463 (ALC), 2020 WL 5813769 (S.D.N.Y. Sept. 30, 2020); *see also Compania Internacional Financiera*, 2011 WL 3251813, at *6 (noting, before *City of Pontiac*, that "*Morrison* . . . never states that a defendant must itself trade in securities listed on domestic

exchanges," and finding *Morrison*'s first prong satisfied where defendants traded domestic securities listed on the NYSE, even though trades occurred in London).

Considering the facts alleged in the FAC, the Court does not find the extensive foreign contacts that were present in *City of Pontiac*.  Here, the FAC alleges that a corporate insider of a United States company violated United States securities laws by engaging in private transactions of the company's common shares which were listed exclusively on a United States exchange.  The Court has not found any cases disfavoring application of *Morrison*'s first prong to analogous facts.  Applying Section 16(b) to the alleged liability-creating transactions here is faithful to the letter and intent of *Morrison* and the Second Circuit's interpretation of that decision.  *See Absolute Activist*, 677 F.3d at 69 n.4 ("Of course, pursuant to the first prong of *Morrison*, § 10(b) does apply to transactions in securities that are listed on a domestic exchange.").  Because the alleged transactions were "in connection with a security that is registered on a domestic exchange," Section 16(b) applies irrespective of whether they were private, off-exchange transactions "orchestrated abroad."  *Cornelson*, 609 F. Supp. 3d at 264.

Because the Court finds that Canoo has plausibly alleged that Section 16(b) applies to DD Global's conduct under *Morrison*'s first prong, it need not address DD Global's arguments that the alleged transactions fail *Morrison*'s second prong.[5]  *See Revelation Cap.*, 246 F. Supp. 3d at 952 n.8 ("If a transaction satisfies the first prong of *Morrison*, the second prong need not be

---

[5] Two Second Circuit cases cited in the parties' briefs, *Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*, 763 F.3d 198 (2d Cir. 2014), and *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d Cir. 2012), primarily analyze the second, "domestic transactions in other securities," prong of *Morrison*'s test.  *See Absolute Activist*, 677 F.3d at 66–67; *Parkcentral*, 763 F.3d at 216.  Accordingly, this Opinion does not address those decisions at length.

examined and vice versa.").  At this stage, the Court does not find that the FAC alleges an impermissible extraterritorial application of Section 16(b).

### B.  Canoo Alleges the Existence of Profits

Turning to the substance of Canoo's allegations, DD Global does not dispute that the FAC adequately pleads the basic elements of a Section 16(b) claim.  *See* Def. Mem. 19–25.  Indeed, Canoo plainly alleges that DD Global was all relevant times a "beneficial owner" of more than 10% of Canoo's outstanding common stock, and that, within a six-month period, DD Global executed a sale and a purchase of Canoo securities: the November 2021 Sale and the March 2022 Acquisition.  FAC ¶¶ 3, 20–21, 24–27, 30; *see Roth*, 740 F.3d at 869.  Rather, DD Global's primary contention is that Canoo fails to state a claim because the FAC does not adequately plead the existence of profits arising from the matched liability-creating transactions.  *See* Def. Mem. 19–23; Def. Reply 7–9.

Although the Second Circuit does not include realization of profits in its recitation of the elements of a Section 16(b) violation, *see, e.g., Gwozdzinsky*, 156 F.3d at 308, it has stated that if a plaintiff "does not allege any facts that indicate that a profit was received, his [Section] 16(b) claim must fail," *S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*, 575 F.2d 1040, 1044 (2d Cir. 1978); *see also Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 323 (2d Cir. 1998) (noting, in passing, that qualifying Section 16(b) transactions are made "at a profit").  Accordingly, the Court, like others in this District, "accepts that [Canoo] must plausibly allege that [DD Global] realized a profit under Section 16(b) for [its] claim to survive the motion to dismiss." *Cosmos Holdings*, 2020 WL 3893347, at *10; *see also Myovant*, 513 F. Supp. 3d at 372 ("While realization of profit is not a standalone element of Section 16(b), '[i]f there were no profits to disgorge, there would be no relief to grant under Section 16(b).'" (quoting *Cosmos Holdings*, 2020 WL 3893347, at *10)); *Segen v. CDR-Cookie Acquisitions, L.L.C.*, No. 05 CIV. 3509 (RWS), 2006 WL 59550, at *3–*6

(S.D.N.Y. Jan. 4, 2006) (dismissing Section 16(b) claim under Rule 12(b)(6) for failure to allege short-swing profits).

DD Global argues that Canoo fails to allege a profit because setting the actual price of the November 2021 Sale ($6.53 per share) against the actual price of the March 2022 Acquisition ($6.72 per share) results in a loss. Def. Mem. 9, 19–20. However, "an individual may be charged with a Section 16(b) 'profit' even when his or her relevant trading actually resulted in a substantial financial loss." *Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 129 n.6 (2d Cir. 2016). Canoo urges, in the FAC and in its briefing on this Motion, that the Court may determine recoverable profits by reference to the market prices of Canoo common shares on the dates of the relevant transactions. FAC ¶¶ 34–38; Pl. Mem. 20–21. Canoo argues that this is the correct method by which to determine profits because the transactions are not "matching full-price share transactions," but involve "privately structured derivatives," such as the participation note acquired in the March 2022 Acquisition. FAC ¶¶ 33–34. The closing price of Canoo stock was $11.43 per share, with a $11.26 VWAP, on the date of the November 2021 Sale, and $5.57 per share, with a $5.44 VWAP, on the date of the March 2022 Acquisition. FAC ¶¶ 3–4, 23, 26, 35–36. Considering the difference between these market prices (or VWAPs) and the prices at which DD Global bought and sold, Canoo alleges that DD Global would have realized a profit on its alleged short-swing trading.[6] ¶¶ FAC 37–38. Canoo cites the SEC's Rule 16b-6(c)(2), 17 C.F.R. § 240.16b–6(c)(2), "which covers the calculation of short-swing profits where a derivative security is matched against purchases or sales [of] a different type of derivative security or common stock."

---

[6] Canoo also points to other facts alleged in the FAC as pleading the existence of profits, such as that DD Global received a "benefit on paper" of $86.69 million in the November 2021 Sale. FAC ¶ 23; Pl. Mem. 19–20.

*Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*, 299 F. Supp. 2d 262, 268 (S.D.N.Y. 2004).

The Rule provides:

> Short-swing profits in transactions involving the purchase and sale or sale and purchase of derivative securities having different characteristics but related to the same underlying security (e.g., the purchase of a call option and the sale of a convertible debenture) or derivative securities and underlying securities shall not exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase. Such profits may be measured by calculating the short-swing profits that would have been realized had the subject transactions involved purchases and sales solely of the derivative security that was purchased or solely of the derivative security that was sold, valued as of the time of the matching purchase or sale, and calculated for the lesser of the number of underlying securities actually purchased or sold.

17 C.F.R. § 240.16b–6(c)(2).

According to Canoo, Rule 16b–6(c)(2) applies because the November 2021 Sale was a sale of common stock, whereas the March 2022 Acquisition was a purchase of a derivative. Pl. Mem. 20–21. Although Rule 16b–6(c)(2) does not precisely set out a method for determining disgorgeable profits in such circumstances (instead setting a cap on recovery and suggesting a method by which profits "*may*" be measured), Canoo's proposed method finds some support in the case law. *See Westcliff*, 299 F. Supp. 2d at 269 (rejecting argument that "the 'actual price' paid for the derivative security should be used instead of the market price of the underlying common stock" in a matched purchase of common stock with a put option (a derivative, the receipt of which is considered a sale)); *Levy v. Gen. Elec. Cap. Corp.*, No. 99 CIV. 10560 (AKH), 2002 WL 1225542, at *2 (S.D.N.Y. June 4, 2002) (noting that "[p]ursuant to the regulation, damages are measured by taking figures, not of the actual securities involved in the purchase and sale (or sale and purchase), but of like securities").

DD Global argues that Canoo's suggested method of calculating profits is incorrect, contending that Rule 16b–6(c)(2) merely provides a cap on recovery, not a method of calculating profits, and that application of Rule 16b–6(c)(1), which covers matched derivatives "that have

identical characteristics," 17 C.F.R. § 240.16b–6(c)(1), is more appropriate because both transactions were tied to Canoo's common shares.  Def. Mem. 20–23.  But courts in this District have found that Rule 16b–6(c)(2) *does* "prescribe[] how short-swing profits are to be calculated," *CDR-Cookie Acquisitions*, 2006 WL 59550, at *3 (citing *Westcliff*, 299 F. Supp. 2d at 268).  And DD Global does not explain how the alleged liability-creating transactions in this case involve "derivative securities that have identical characteristics," 17 C.F.R. § 240.16b–6(c)(1), when it concedes that the November 2021 Sale involved a straightforward sale of common stock, "to be sure, not a derivative instrument," Def. Mem. 22.

In any event, while Canoo's profits theory may be novel or even "bizarre," as DD Global contends, Def. Mem. 23, "a motion to dismiss is directed towards a cause of action, not to different damage theories that may be asserted under the cause of action."  *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, L.L.P.*, 212 B.R. 34, 41 (S.D.N.Y. 1997).  At this stage, Canoo is required only to plausibly allege the elements of a Section 16(b) claim, including the *existence* of a profit arising out of the relevant transactions.  *See Cosmos Holdings*, 2020 WL 3893347, at *10.  The Court cannot say, based on the allegations in the FAC, that Canoo has not alleged "*any* facts that indicate that a profit was received." *S. & S. Realty*, 575 F.2d at 1044 (emphasis added).  Whether or not Canoo's proposed calculation of profits is viable is an issue to be taken up at a later stage of this litigation, upon the development of a full record.

## C.   The Unorthodox Transaction Exception Does Not Apply

DD Global argues that the "unique circumstances" of the alleged transactions favor of dismissal, because applying Section 16(b) to them would be inconsistent with the statute's legislative purpose.  Def. Mem. 23–25.  First, DD Global argues that the November 2021 Sale was compelled by the NSA, which limited DD Global's control of Canoo and required it to reduce its Canoo holdings.  Second, DD Global argues that because the March 2022 Acquisition was

preceded by a sale of 10,500,000 Canoo shares to Bank J. Safra, it was part of a "simultaneous" transaction that represented only a change in the form of DD Global's ownership, not any pecuniary change, rendering Section 16(b) inapposite.[7]  Def. Mem. 23–25.  In making these arguments, though it does not address the doctrine by name, DD Global appears to invoke the "unorthodox transaction" exception to Section 16(b) liability derived from the Supreme Court's decision in *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582 (1973).  *See At Home Corp. v. Cox Commc'ns, Inc.*, 446 F.3d 403, 407 (2d Cir. 2006); *Tyco Lab'ys, Inc. v. Cutler-Hammer, Inc.*, 490 F. Supp. 1, 7 (S.D.N.Y. 1980).

Although the Supreme Court cautioned in *Kern* that courts should "apply [Section 16(b)] only when its application would serve its goals," 411 U.S. at 595, the Second Circuit has construed this direction narrowly.  "In limited circumstances, we scrutinize 'borderline' or 'unorthodox' transactions 'pragmatic[ally]' to determine whether they serve as a 'vehicle for the evil which Congress sought to prevent—the realization of short-swing profits based upon access to inside information.'"  *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 218 (2d Cir. 2012) (quoting *Kern*, 411 U.S. at 593–94 & n. 26).  In this Circuit, *Kern*'s unorthodox transaction exception applies *only* if the transaction is "an [1] involuntary transaction by an insider [2] having no access to inside information."  *Id.* at 218–19 (internal quotation marks omitted) (quoting *At Home Corp.*, 446 F.3d at 408); *see Donoghue v. Tannenbaum*, No. 22-1156, 2023 WL 4631963, at *2 (2d Cir. July 20, 2023).

The Court finds no unique circumstances to render Section 16(b) inapplicable to the alleged facts under this exception.  To start, the alleged liability-creating transactions are hardly

---

[7] For the avoidance of doubt, the Court notes that the relevant alleged liability-creating transactions are *not* the "simultaneous" March 2022 sale and acquisition, but the November 2021 Sale matched with the March 2022 *Acquisition*.  The March 2022 sale of Canoo shares is irrelevant to DD Global's alleged Section 16(b) liability.

"unorthodox"; they are not "transactions not ordinarily deemed a sale or purchase." *Kern*, 411 U.S. at 594.  The November 2021 Sale is alleged to be a "traditional cash-for-stock transaction[]." *Id.* at 593; *see* FAC ¶¶ 21–24.  And the participation note acquired in the March 2022 Acquisition is, as Canoo alleges, a "call equivalent position," a derivative security to which Section 16(b) squarely applies.  FAC ¶ 26; *see Magma Power*, 136 F.3d at 322–23 ("The establishment of a 'call equivalent position' constitutes a purchase of the underlying security for purposes of Section 16(b)."); 17 C.F.R. § 240.16b–6(a); *see also Gwozdzinsky*, 156 F.3d at 308–09 ("[H]olding derivative securities [is] functionally equivalent to holding the underlying equity securities" for purposes of a Section 16(b) claim, and "[i]n the case of derivative securities, . . . the terms 'purchase' and 'sale' [are interpreted] broadly." (internal quotation marks omitted)).

More critically, both transactions fail the first element of the Second Circuit's unorthodox transaction exception because they were not "involuntary." *Huppe*, 670 F.3d at 218.  First, although DD Global argues that it was "exploited" by Canoo management to complete the November 2021 Sale "below-market . . . to maintain temporary compliance with the NSA's shareholding reduction requirements," Def. Mem. 23, that sale cannot be deemed involuntary.  As alleged in the FAC, DD Global was in fact free to *fail* to comply with the reduction mandates of the NSA by instead having its Canoo shares transferred to a voting trust.  *See* FAC ¶ 20.  *Compare Tyco*, 490 F. Supp. at 8 & n.6 (finding that purportedly "forced" sale was not involuntary and collecting cases, noting that "other courts have uniformly rejected 'forced sale' defenses to section 16(b) liability"), *with Tannenbaum*, 2023 WL 4631963, at *3 (finding merger-related acquisition involuntary where insider was required to vote shares in favor pursuant to voting agreement); *Heublein, Inc. v. Gen. Cinema Corp.*, 559 F. Supp. 692, 699 (S.D.N.Y.) ("An exchange pursuant to a merger is 'involuntary' . . . where the party making the exchange has an 'utter inability . . . to

control the course of events.'" (quoting *Am. Standard, Inc. v. Crane Co.*, 510 F.2d 1043, 1054 (2d Cir. 1974))), *aff'd*, 722 F.2d 29 (2d Cir. 1983).

DD Global's arguments with respect to the March 2022 Acquisition are even less persuasive. DD Global contends that it acquired the participation note to maintain its pecuniary interest in Canoo after disposing of Canoo common shares in compliance with the NSA. Def. Mem. 23–24. But DD Global cannot, consistent with the facts alleged in the FAC, argue that its acquisition of the participation note was somehow a transaction that it had an "utter inability . . . to control." *Am. Standard*, 510 F.2d at 1054. The NSA, as alleged, required only the *disposition* of shares. FAC ¶ 20. The fact that DD Global's behavior in maintaining its position may have been "economically efficient," Def. Mem. 23, does not exempt it from Section 16(b) liability. "[A] trader's intent and/or motive" in buying or selling shares "is irrelevant" to a Section 16(b) claim. *Mendell In Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 727 (2d Cir. 1990), *aff'd sub nom. Gollust v. Mendell*, 501 U.S. 115 (1991); *see Kern*, 411 U.S. at 595.

Finally, even if the Court were to find the transactions at issue involuntary, it would find the second element of the unorthodox transaction exception unsatisfied at this stage. The Court cannot find, considering solely the allegations in the FAC, that there is not "at least the possibility of speculative abuse of inside information." *Huppe*, 670 F.3d at 219 (internal quotation marks omitted). In sum, the Court does not find on this Motion that any "unique circumstances" of the alleged transactions exempt DD Global from Section 16(b) liability.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is DENIED.  The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 16.


**SO ORDERED.**


**Date:  September 21, 2023**                    **MARY KAY VYSKOCIL**
**New York, NY**                                         **United States District Judge**